IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  14-cv-00958-WYD-NYW

LOU HODGES,

     Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Insurance
Company,

     Defendant.
_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

    This case, initially filed in April 2014, is brought pursuant to the Employee

Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1001, *et seq.*  Plaintiff Lou

Hodges ["Hodges"] initially sought judicial review of the determination of Defendant Life

Insurance Company of North America ["LINA"] in 2012 and 2013 that Plaintiff was not

classified as "Sales Personnel" and therefore not entitled to a higher level of monthly

benefits under LINA's long term disability ["LTD"] policy.  The higher level of benefits

includes "bonuses or target incentive compensation bonuses" in the covered earnings

on which the monthly LTD benefit is based.

    By Order of February 27, 2017, ECF No. 33 ["Remand Order"], I found that LINA

committed error in connection with its decision by not providing a full and fair review and

by breaching its fiduciary duties to Hodges.  I remanded the case to LINA for further

factfinding as to whether Hodges should be considered "Sales Personnel" under the

policy and entitled to the higher level of benefits. The case was administratively closed

subject to being opened for good cause if either party wished to obtain review of LINA's

determination on remand. (*Id.*)

On June 8, 2017, Hodges filed an Unopposed Motion to Reopen Case. (ECF

No. 34.) The motion indicated that LINA had, on remand, upheld its prior decision

which was adverse to Hodges, and that Hodges wished to obtain court review of that

determination. (*Id.*) The case was reopened by Order of June 12, 2017 (ECF No. 35),

and the matter is fully briefed as to LINA's decision on remand.

II.    BACKGROUND

The Remand Order sets out in detail the history and underlying facts and I

incorporate by reference that Order. I do, however, reiterate a few key facts.

Hodges was employed by Endo Pharmaceuticals ["Endo"], most recently as a

CryoTherapy Technician II. (Remand Order at 2.) As an Endo employee, Plaintiff was

a participant in an employee benefit plan established by Endo and governed by ERISA.

The Policy defines two classes of employees:

> Class 1  All active, Full-time and part-time Employees of the
> Employer, *excluding Sales personnel*, regularly working a
> minimum of 20 hours per week.
>
> Class 2  All active, Full-time Employees of the Employer
> *classified as Sales Personnel* regularly working
> a minimum of 20 hours per week.

(Administrative Record, ECF No. 11 ["AR"] at 3) (emphasis added). The term "Sales

Personnel" is not defined in the policy.

While both classes of employees are entitled to 60% of their "monthly Covered

Earnings" (subject to a maximum benefit) (AR 4, 7), the definition of Covered Earnings

is different for each class.   For Class 2 Employees, the Policy provides that Covered

Earnings include the "wage or salary as reported by the Employer for work performed

. . . and earnings received from bonuses or target incentive compensation bonus, but

not commissions, overtime pay or other extra compensation...." (*Id.* 7.)  For Class 1

employees, Covered Earnings do "not include amounts received as bonus,

commissions, overtime pay or other extra compensation." (*Id.* 4.)

Hodges was granted short-term disability benefits beginning in October 2011 due

to a degenerative eye condition.  (Remand Order at 5.)  He received these benefits until

his claim for LTD benefits was approved in April 2012.  (*Id.*)  There is no dispute in this

case that Hodges meets the definition of disability and is receiving LTD benefits.  The

only dispute is whether he is entitled to additional benefits as a Class 2 "Sales

Personnel" employee for the bonuses he received.  Thus, LINA has paid LTD benefits

to Hodges since early 2012, but has not included his bonuses in the benefit amount on

the basis that he is not considered "Sales Personnel." (*Id.*)  Hodges asserts that if he

were he classified as a Class 2 employee he would be entitled to an additional $902 per

month, based on 60% of $1,503 per month, for a total monthly benefit of $3,072.  (*Id.*)

In the Remand Order, I found that LINA breached its fiduciary duty by failing to

conduct a full and fair investigation of Hodges' claim, both during the initial claims

process and on appeal.  Thus, I found among other things "that LINA either did not

consider or entirely discounted the evidence submitted by [Hodges] that supported his

assertion that he was "Sales Personnel", and "appeared to defer entirely to [Endo's]

assessment of Plaintiff's status. . . without requiring documentation or a justification for

that" assessment." (Remand Order at 25-26, 29.)  I stated that "[t]he failure to

adequately consider Plaintiff's evidence on this issue rendered LINA's consideration of the evidence 'impermissibly one-sided.'" (*Id.* at 26) (quotation omitted).

I also noted that there was "an absence in the record of any evidence that classified Hodges (or any other employee, for that matter) as a non-sales employee before Hodges first submitted his claim for benefits. (Remand Order at 23.)[1] I found that LINA improperly deferred to Endo's post hoc interpretation that Hodges was not Sales Personnel, made by benefits analyst Lori Capozzi ["Capozzi"], and that it should not have accepted that interpretation "without a full and fair investigation and consideration of all the evidence, not just that submitted by Endo." (*Id.* at 30, 26-27.) I remanded the case to LINA "for further fact finding based upon a full review and investigation of whether Hodges was or should have been considered 'Sales Personnel.'" (*Id.*) Hodges' request for an award of attorney fees was denied without prejudice.

On remand, Hodges submitted three new documents to LINA; namely, the 2010, 2011, and 2012 Incentive Compensation Plans. (Supplemental Administrative Record, ECF No. 41 ["SAR"], 1123–1134.) A month later, LINA, through its Senior Appeal Specialist Katie Huerbin ["Huerbin"], contacted Douglas D. Macpherson ["Macpherson"], Senior Vice President and Associate General Counsel for Endo, via email. (SAR 1111.)

---

[1] While an eligibility feed tendered by Endo to LINA stated that Plaintiff was a "CLASS 1" employee, I noted in the Remand Order that it was not clear from the record when this determination was made, *i.e.*, before or after Plaintiff's claim for LTD benefits was made. I also found that this classification was not dispositive because LINA did not rely on it. Instead, it asked for additional information from Endo as to Hodges' job responsibilities and whether Endo "considered" Hodges to be Sales Personnel, even "in part". (*Id.* 23, 24.) On remand, neither Endo nor LINA relied on or referenced this eligibility feed. Moreover, there is no evidence in the record about what this eligibility feed was or how it tied into the denial of benefits involving bonuses. I thus find that it does not resolve the classification issue and is not relevant to my review of LINA's determination on remand.

In the email, Huerbin noted a conversation she had the previous week with Macpherson, although she did not describe or document the substance of the conversation, and stated:

> We have considered Mr. Hodges's position as a CryoTherapy Technician II to be a non-sales position. Based on the LTD policy, he would be considered a Class 1 employee. Per the policy, Class I employee's covered earnings do not include amounts received as bonuses, commissions, overtime pay or compensation.
> Mr. Hodges's and his attorney feel that he should be considered a Class 2 employee because he participated in a Target Physician Incentive Compensation Plan. The policy outlines that for Class 2 employees, Bonuses or target incentive compensation bonuses will be averaged for the 12 months just prior to the date Disability begins[.]
>
> Please let me know if there is anything additional I can provide you with. I have also attached a copy of the LTD policy, the Job Description and additional documentation that his attorney has submitted.

(*Id.*)

Macpherson responded with an email dated May 17, 2017, stating that "[i]n reviewing our files about the Hodges matter, the information I have been able to find supports the determination that Hodges was not a sales employee." (SAR 1110.) His email is discussed in more detail below. Less then a week after receiving this email, LINA issued its decision on remand on May 23, 2017, stating that "[a]fter completing our review of Mr. Hodge's claim, we must uphold our prior decision." (SAR 1107-09.) It noted that "Mr. Hodge's complete file, including any additional information you submitted was reviewed in its entirety without deference to prior reviews." (*Id.*)

As to how the decision was reached, LINA found that at the time Hodges ceased working with Endo on October 14, 2011, he was employed as a CryoTherapy Technician II. (SAR 1108.) It stated that "[i]t was previously confirmed with Endo. . .

-5-

that this was not considered to be a Sales position; therefore, he was considered to be a Class 1 Employee whose Covered Earnings did not include amounts received as bonuses, commissions, overtime pay or other extra compensation." (*Id.*) LINA explained that "[i]n order to further clarify if a Cryotherapy Technician II is considered as a Sales Personnel or not, we reached out to Endo Pharmaceuticals and received additional information from Douglas D. Macpherson, Senior Vice President and Associate General Counsel." (*Id.*) LINA noted that in addition to reviewing the policy and job description, it provided Macpherson with the three incentive plans from 2010 to 2012 that Hodges had submitted to LINA. (*Id.*)

LINA concluded that "[i]n order to be considered a Class 2 employee, Mr. Hodges needed to be classified as Sales Personnel." (SAR 1108.) "The information that has been provided does not confirm that Mr. Hodges's job as a Cryotherapy Technician II was a sales position." (*Id.*) Its rationale was as follows:

> Upon review of all information contained in the claim file and further clarification from Endo Pharmaceuticals, we have determined the information you provided does not change the prior decision to classify Mr. Hodges as a Class I Employee. Endo Pharmaceuticals advised that Mr. Hodges's Job Description for a CryoTherapy Technician II outlined that he was responsible for operating Cryo equipment. The Job Description does not state that he would be a Sales Employee and there were not any sales responsibilities required. It was confirmed that Mr. Hodges did not participate in any sales incentive plans. Although it was confirmed that he participated in the CryoTherapy Incentive Compensation Plan, this was based on the number of procedures he performed. Endo Pharmaceuticals confirmed that Mr. Hodges' pay was not tied to any sales. Although he was asked to provide one lead per month to the Sales Department, there was no requirement that the lead actually resulted in a sale.

(*Id.*)

Hodges contends that on remand, LINA once again exclusively considered evidence submitted by Endo and failed to make a full and fair review of his claim. Further, he contends that LINA blatantly ignored several directives in the Remand Order as to factfinding it was supposed to conduct, and once again breached its fiduciary duty. Hodges asserts that LINA's repeated disregard of the evidence submitted by him makes another remand a futile gesture and justifies an award of benefits to him. Finally, Hodges again asserts that he is entitled to an award of his attorneys' fees.

III.    ANALYSIS

As I found in the Remand Order, the de novo standard of review applies. (Remand Order at 21.) This standard of review applies because I found that LINA was not given discretionary authority to determine eligibility for benefits or to construe the terms of the plan. (*Id.*) In conducting a de novo review, the district court's role is to determine whether the ERISA plan administrator made a correct decision based on the record before it at the time the decision was made. *Gilbertson v. AlliedSignal, Inc.*, 172 Fed. Appx. 857, 860 (10th Cir. 2006); *see also Pratt v. Petroleum Prod. Mgmt., Inc. Emp. Savings Plan & Trust*, 920 F.2d 651, 658 (10th Cir. 1990). In making this determination, the court "'reviews the administrator's decision without deference to that decision and without any presumption of correctness.'" *Gilbertson*, 172 Fed. Appx. at 860 (quotation omitted).

The failure to follow ERISA procedures provides a basis for reversal separate from that provided by de novo review of the merits of the claim. *Nilas v. American Airlines, Inc.*, 289 Fed. App. 827, 832 (10th Cir. 2008). This includes the requirement that an insurer provide a full and fair review of a claim for benefits. *Id.* (citing *Hackett v.*

*Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 777 (7th Cir. 2003)); *see also* 29 C.F.R. § 2560.503-l(h)(2)(iv) (ERISA fiduciaries have a duty to provide a full and fair review "that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim. . . .)  Thus, "[a]lthough the insured ultimately carries the burden of showing he is entitled to benefits, the plan administrator has a fiduciary duty to the insured to conduct an investigation and to seek out the information necessary for a fair and accurate assessment of the claim." *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009).

I find that LINA once again failed to conduct a full and fair review of Hodges' claim for additional benefits.  At the outset, I find that LINA failed to conduct an adequate investigation into whether Hodges was "classified" by Endo as "Sales Personnel", in order for him to be eligible for additional benefits based on bonuses.  As LINA has acknowledged, the issue of whether Endo classified Hodges as "Sales Personnel" is "[a] fundamental and critical factor" in this case.  (LINA's Resp. to Hodges' Opening Br. ["Resp."], at 8.)

As noted in the Remand Order, Hodges provided evidence to LINA in connection with the initial determination that he was initially told by Endo representative Lori Capozzi ["Capozzi"] that his bonuses would be included in his earnings for purposes of his LTD benefits.  (Remand Order at 28.)  When Hodges later asked Capozzi why his bonuses were not included, she responded that "someone" at Endo had made the determination that Hodges was not "sales" and should be classified as a Class 1

employee. (*Id.*; *see* AR 744.)[2]  There was no evidence in the record as to this, and I found that LINA failed to investigate who made this alleged determination, when or how it was made, or request documentation that supported the determination.  (Remand Order at 28.)

I found that this was particularly significant given Hodges' uncontested assertion that he was not classified by Endo prior to LINA's determination of the issue in connection with his LTD claim.  (*Id.* at 28, 23.)  Thus, Endo appeared to be making a post hoc rationalization to deny him benefits.  I concluded on this issue:

> LINA should have inquired into how Endo determined that someone was or was not "Sales Personnel" and should have obtained the rationale behind that determination to see if Hodges' classification fit within that rationale.  If Endo's rationale for its classification who constituted "Sales personnel" was not reasonable, it should have made an independent determination as to the meaning of the term "Sales personnel", and whether Plaintiff should be covered under that term under the reasonable insured doctrine.  LINA's failure to do so means that it breached its fiduciary duties to Plaintiff.

(*Id.* at 29-30.)

On remand, LINA completely ignored these findings and again conducted no investigation into if, when, or by whom Hodges was classified as not being "Sales Personnel", even though this is the key issue in this case.  Thus, LINA again has not identified and cannot identify any record evidence that this classification ever occurred. It also elicited no evidence regarding classification of any of Endo's employees, let alone that such classification was reasonable.  Instead, it again relies solely on the post hoc representations of Endo that Hodges was not "Sales Personnel".  While LINA

_____

[2] The Remand Order mistakenly stated that someone had Endo had determined that Plaintiff should be classified as a Class 3 employee, rather than a Class 1 employee.  (*Id.* at 28.)

argues that Hodges is in effect arguing that the Court and LINA should ignore Endo's position and accept his interpretation of his classification as an employee, it fails to acknowledge the fact that LINA itself has not addressed or justified the classification issue.

I also note that LINA failed to conduct a full and fair review of whether Hodges *should* be classified as Sales Personnel based on the bonuses he received. (Remand Order at 24.) Once LINA began considering this issue, it had a duty to give full and fair consideration to all the evidence. Thus, the Remand Order detailed the evidence offered by Hodges that LINA failed to consider originally and which needed to be considered on remand. For example, the Remand Order noted that Hodges offered evidence that:

> His sales duties were memorialized in his job description as well as goals communicated by Endo's Senior Director of Cryosurgery Operations. His responsibilities included "assist[ing] in the growth and development of existing and new business lines" (AR 941), and his essential job functions included developing relationships with physician offices and facilities (*id.* 942). Hodges was required to generate a lead each month, and his success at doing so was reflected both in performance reviews and bonuses.

(Remand Order at 26, *see also* 4.)

Hodges also offered evidence that he was engaged in marketing of Endo's clinical offerings. Thus, he presented evidence in the form of a May 2009 email from Allyn Chung, the Senior Director of Cryo Operations, stating, "I cannot stress enough the importance of making regular visits to your physician's offices and helping market the technology". (Remand Order at 4; AR 752.) Further, Hodges asserted that he received bonuses in connection with his successful marketing of Endo's products. For

example, the Remand Order notes that Hodges was given a bonus of $3,000 for every $100,000 of pathology work that a doctor performed using Endo's equipment and services, and he received a monthly bonus for every case that he worked on. (Remand Order at 4; AR 745.) Altogether in the year prior to the date Hodges' disability began, Endo paid him $18,042 in bonuses, a monthly average of $1,503. (Remand Order at 4; AR 725-741.) Hodges' counsel noted that "the payments were designated as bonuses on Mr. Hodges' pay stubs and taxed at a higher rate." (Remand Order at 28-29, AR 745.)

In addition, the Remand Order noted that while Capozzi stated that Hodges' bonus "earnings are not part of the overall bonus or [Incentive Compensation] program at Endo and were not included in the premium calculation", there was no questioning by LINA as to how this was supported or by what documentation. (Remand Order at 29.) I found that the fact the bonuses were not included in the premium calculation was not dispositive, nor was Hodges' job description as a field technician. (*Id.*) Indeed, I noted that Capozzi herself recognized this when she asked LINA to "review and let us know whether these bonus earnings will be included in the LTD calculation." (*Id.*)

Yet on remand, LINA did not advise Macpherson or anyone else at Endo about the above facts and evidence and there is thus no indication that these facts were considered by Endo. Instead, LINA advised Macpherson only that "Mr. Hodges's and his attorney feel that he should be considered a Class 2 employee because he participated in a Target Physician Incentive Compensation Plan." (SAR 1111.) Based on this, I reject LINA's assertion that it provided "full information and materials" to Macpherson for his consideration (LINA's Resp. at 9).

There is also no indication that LINA considered this information provided by Hodges as was required per my Remand Order. While LINA stated that it reviewed the "complete file and "all information contained in the claim file" (SAR 1108), it did not, either in its initial determination, appeal, or the current determination, actually mention or discuss Hodges' evidence or explain why it did not support Hodges' position. *See Rasenack*, 585 F.3d 1311, 1326 (10th Cir. 2009) (questioning whether AIG actually considered an affidavit submitted by the claimant where it stated it reviewed the entire file but the denial letter did not mention any of the information in the affidavit, and finding that AIG's apparent failure to consider the affidavit rendered its review impermissibly one-sided); *cf. Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141, 1154 (10th Cir. 2009) (court could not find that MetLife denied the claimant a full and fair review where it "did not ignore her evidence; it merely found it inconclusive, stating, "[b]oth appeal-denial letters took into account the information Ms. Hancock had submitted and then reasonably explained why the information was insufficient to support" her theory). The failure to consider all of the evidence in the record violated LINA's duty to give a full and fair review. *Rasenack*, 585 F.3d at 1326 (AIG violated the full and fair review requirement by disregarding claimant's evidence and cherry-picking the information helpful to its decision).

Moreover, even if I assume that LINA reviewed the information provided by Hodges, it did not discuss how this information either supported or did not support Hodges' position that he was "Sales Personnel", even in part. Nor did LINA request from Endo any information in connection with the duties that Hodges discussed, and why they were or were not sales. Instead, LINA again relied exclusively on Endo's post

hoc determination based on Hodges' job title and description (AR 941-42, 1113-14), even though I had previously found that these were not dispositive. (Remand Order at 29.)

Thus, LINA once again did not independently analyze the contents of the job description or Hodges' other evidence that his job involved selling and promoting Endo's commercial products and services. Instead, it again deferred entirely to Endo's assessment. (Remand Order at 29.) This is shown by LINA's one–paragraph rationale for the denial of benefits which essentially reworded Macpherson's email, as described below:

| Macpherson Email (AR 1110) | LINA's Decision (AR 1108) |
|---|---|
| "His JD is attached, which shows that he was a CyroTherapy Technician whose job it was to operate Cyro equipment." | "Endo Pharmaceutical advised that Mr. Hodge's Job Description for a CryoTherapy Technician II outlined that he was responsible for operating Cyro equipment." |
| "His JD does not classify him as sales employee, nor are any sales responsibilities included in the job description." | "The Job Description does not state that he would be a Sales Employee and there was not any sales responsibilities required." |
| "The record reflects that Hodges did not participate in any sales incentive plans." | "It was confirmed that Mr. Hodges did not participate in any sales incentive plans." |
| "The plan he did participate in (which is attached) was based on the number of procedures he performed." | Although it was confirmed that he participated in the Cryotherapy Incentive Compensation Plan, this was based on the number of procedures he performed." |
| "The record also reflects that no part of his pay was tied to sales." | "Endo Pharmaceuticals confirmed that Mr. Hodges' pay was not tied to any sales." |

-13-

"It is true that he was asked to provide one lead a month for sales reps to call on. All that was required was to provide a lead, there was no requirement that the lead result in sales."

"Although he was asked to provide one lead per month to the Sales department, there was no requirement that the lead actually resulted in a sale."

As to the last issue referenced above regarding leads, the Remand Order cited Hodges' responsibilities for developing Endo's business lines (Remand Order at 4), and pointed to Hodges' assertion that he "was required to generate a lead each month, and his success at doing so was reflected both in performance reviews and bonuses" as relevant evidence which LINA failed to consider. (Remand Order at 26). On remand, Endo and LINA both sidestepped the issue by limiting their analysis of these duties to a finding that "there was no requirement that the lead result in sales." (*See* SAR 1108, 1110.) Hodges never claimed, however, there was a requirement that it result in sales. Instead, he asserts that he received "sales bonuses" based on success and it was a factor in his performance reviews. (AR 939.) This was not considered by LINA.

Moreover, as to the compensation plans provided on remand, LINA simply repeated Endo's explanation that any bonuses under the plans were "based on the number of procedures he performed." (SAR 1108.) There is no evidence, however, that LINA considered the actual terms of the incentive plans. As to Endo, while Macpherson stated he considered the 2010 plan, he did not consider the 2011 or 2012 plans.[3] This selective application of the evidence was a violation of the requirement of a full and fair review. *See Moon v. Unum Provident Corp.,* 405 F.3d 373, 381 (6th

---

[3] While LINA's denial letter to Hodges stated that it provided Macpherson all three plans (SAR 1108), the record reflects that LINA only attached the 2010 Plan to its email to Macpherson (SAR 1111-1118) and Macpherson only discussed that plan in his response. (SAR 1110.)

Cir.2005) (abuse of discretion to conduct "selective review of the administrative record" rather than "administrative record as a whole"); *see also Wilcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693 (8th Cir. 2009) ("A plan administrator abuses its discretion when it ignores relevant evidence"; "Liberty Life's obligation as an ERISA fiduciary required more than combing the record for evidence in its favor and abandoning its review upon discovering 'more than a scintilla' of such evidence") (citation omitted). The selective review of evidence, and indeed, the outright ignoring of Hodges' evidence, makes the review process impermissibly one-sided.

While all three plans arguably support Hodges' argument that he received incentive compensation or "bonus payment[s]" based on sales (SAR 1124), the 2011 and 2012 plans that Macpherson did not consider are particularly strong evidence of this. They apply to those employees "performing cryotherapy procedures", and provide bonuses to employees who recruit new physicians and convince those new physicians to treat six cases using Endo's methods. (SAR 1127–1134, and specifically, 1128 and 1132, § V.A.) These activities do not appear to relate in any way to a technician's "performance of cryotherapy", as argued by LINA (Resp. at 14), and are designated both as "incentive compensation" and "bonuses". (SAR 1124-1134.) Endo's assertions that the plans were based on the number of procedures Hodges performed and that Hodges "did not participate in a sales incentive plan" (SAR 1110) ignore the actual terms of the plans. LINA accepted Endo's characterization of Hodges' position without question, failing to examine or discuss the actual terms of the plans.[4]

---

[4] I acknowledge LINA's argument that the performance of additional work such as business development does not mean that every employee falls with in the classification of "Sales Personnel". Yet LINA failed to look at the terms of the incentive compensation plans or Hodges' evidence, inquire into the

LINA acknowledges it did not follow up or independently investigate any further after receiving Macpherson's email, stating that any "additional review" was unnecessary "[b]ased on the nature of Macpherson's response." (Resp. at 16.) LINA does not explain, however, what about the nature of Macpherson's rather conclusory response meant that it did not require any additional review. Further, while LINA claims that "Macpherson's explanation went far beyond" the response in the initial review (Response Br. at 14), the administrative record belies this claim. Capozzi's January 7, 2013 email (AR 721) and emails on March 20, 2012 (AR 930, 939) make the same argument that Macpherson did that Hodges's bonuses were calculated on the amount of cases treated, which again is not consistent with the plans or with Hodges' evidence.[5]

Moreover, I find that Endo's post hoc determination as to why Hodges is not Sales Personnel is not supported by substantial evidence. The evidence it relied on (such as the Job Description and Incentive Compensation Plans) was either not determined to be dispositive on the issue, as noted in the Remand Order, or do not support Endo's statements as discussed above. LINA's determination that Hodges was not Sales Personnel based on Endo's determination was thus not properly supported.

A full and fair review also requires that the claimant have "'an opportunity to address the accuracy and reliability of the evidence.'" *Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 894 (10th Cir. 1988) (quotation omitted). Hodges was

classification process, or investigate how Endo determined that someone was or was not "Sales Personnel" as noted previously. Thus, this argument is unpersuasive.

[5] Further, Capozzi's statement that the bonuses were paid if Hodges "was able to fit and schedule a few more tests during his work week" (AR 721) is not consistent with the terms of the plans.

not given an opportunity to address the accuracy or reliability of Endo's statements. *See Bishop v. Long Term Disability Income Plan of SAP Am.*, No. 04-CV-0031-CVE-PJC, 2008 WL 5378334 (N.D. Okla. Dec. 23, 2008) (finding that LINA erred in issuing a final, rather than an initial, decision on remand appeal when new evidence and matters outside of the administrative record were considered and Bishop did not have a chance to comment on the evidence relied upon by LINA, and stating that "[t]his raises a serious question as to whether LINA's decision was arbitrary and capricious").[6]

This is particularly significant since Macpherson did not appear to have independent knowledge of Hodges' duties or classification. (*See* SAR 1110—Macpherson's email stating that *the information he found in reviewing the files* "supports the determination that Hodges was not a sales employee") (emphasis added.)  This error was compounded by the fact that LINA did not inquire into what evidence Macpherson relied on in "reviewing the file", and any such evidence was not made part of the record.  Thus, neither Hodges nor the court knows what other evidence Macpherson actually relied upon.  *See Sage*, 845 F.2d at 893 ("full and fair review means "'knowing what evidence the decision-maker relied upon'") (quotation omitted).

Instead of conducting a full and fair review and a thorough investigation of Hodges' claim, as required by my Remand Order, it appears that LINA "took an advocacy position".  *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (finding that the plan did not take steps to ensure a neutral review

---

[6] This decision was later vacated by the court based on a settlement, *Bishop v. Long Term Disability Income Plan of SAP Am., Inc.*, No. 04-CV-0031-CVE-PJC, 2009 WL 982534, at * (N.D. Okla. March 30, 2009), but I still find it instructive.

process when the nurse case manager "took an advocacy position" in her letters to the claimant's physicians soliciting their agreement with her disability conclusion); *DeBenedictis v. Hartford Life and Accident Ins. Co.*, 701 F. Supp. 2d 1113, 1128 (D. Ariz. 2010) (same). Thus, LINA emphasized that "[w]e have considered Mr. Hodges's position as a CryoTherapy Technician II to be a non-sales positions", and that "Mr. Hodges's and his attorney feel that he should be considered a Class 2 employee." (SAR 1111.) Macpherson then appears to defer to LINA's prior determination. (SAR 1110.) Thus, LINA defers the determination of whether Hodges is classified as sales personnel to Endo's representative Macpherson, after representing that it considers Hodges' position a non-sales position, and Macpherson then appears to defer to LINA's previous determination.

Finally, I agree with Hodges that LINA impermissibly continued to hold him to a higher burden of proof than Endo. (*See* Remand Order at 29.) On the initial claim and appeal, LINA required Hodges to provide "[d]ocumentation from the Employer stating Mr. Hodges position as a CryoTherapy Technician is considered a sales position with the employer." (AR 319.) On remand, LINA again relied on the fact that the "Job Description does not state that he would be a Sales Employee." (SAR 1108.) LINA thus essentially required Hodges to provide specific documentation from Endo that he was classified as Sales Personnel in order to overcome LINA's apparent presumption that he was not, while Endo was allowed to provide conclusory assertions that were not properly supported. This is improper. Notably, in its denial decisions, LINA virtually copied Endo's emails without any consideration of Hodges' evidence or arguments.

Based on the above errors, I concluded that LINA failed to conduct a full and fair review and breached its fiduciary duties to Hodges. I must therefore address the appropriate remedy. Hodges contends that a remand would be futile given LINA's failure to conduct a full and fair review on remand, and that no further fact finding is required for the Court to award him benefits. Thus, he asserts that the Court should find that he meets the definition of Class 2 "Sales Personnel" and award him the benefits required as to this class.

I agree with Hodges that courts have found that a remand would be futile and awarded benefits in circumstances similar to this case. Thus, the Seventh Circuit found that the district court did not abuse its discretion in reinstating benefits rather than remanding where the administrator failed to conduct a full and fair review of a claim for benefits by not providing the rationale or what evidence was relied on for the denial and "failed to resolve serious questions concerning [the claimant's] continued eligibility." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir. 1992). Similarly, the Third Circuit affirmed the district court's conclusion that the plan failed to conduct a full and fair review of the benefits claim and found that it did not abuse its discretion in reinstating benefits, rather than remanding the case. *Grossmuller v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am.*, 715 F.2d 853, 859 (3rd Cir. 1983). Another court awarded benefits after the insurer refused to give a fair review on three occasions and found that a remand would be futile as there was no evidence in the record to support a denial of benefits. *Butler v. United Healthcare of Tennessee, Inc.*, No. 3:07-CV-465, 2013 WL 5488644, *10 (E.D. Tenn. Sept. 30, 2013), *aff'd in part and rev'd in part on other grounds*, 764 F.3d 563 (6th Cir. 2014). Finally, the *Bishop*

court decided not to remand the case as futile when the case had already been remanded to LINA for findings on two discrete issues and LINA's decision on remand was yet again not supported by substantial evidence. 2008 WL 5378334, at *16.

Here, I agree with Hodges that a remand would be futile under the above authority. This case was already remanded to LINA with explicit directions on what factfinding should occur and what evidence should be considered. LINA blatantly ignored the directives in the Remand Order, choosing to make a decision based on a post hoc determination by General Counsel for Endo that essentially reiterated what had previously been stated by Endo in connection with the initial determination and which the Court found in the Remand Order was insufficient. Further, LINA has shown a marked disregard as to Hodges' evidence and arguments throughout these proceedings, failing to consider or weigh them despite multiple opportunities. Based on this, I do not believe that LINA would provide a full and fair review if this case were to be remanded yet again, particularly given LINA's conflict of interest in its admitted dual position as insurer and claim administrator (Remand Order at 21 n. 4; LINA's Resp. to Opening Br., ECF No. 23, at 29). *See Watson v. UnumProvident Corp,* 185 F. Supp. 2d 579, 587 (D. Md. 2002) (finding that a remand would be futile and the plan administrator should not be able to "avoid the consequences of its unreasonable and unprincipled deliberative process through the expedient of a remand" when it was "laboring under a manifest conflict of interest").

Moreover, a remand is not required because I find, based on the record as it currently exists, that no additional factfinding needs to occur and the case can be resolved on the record. Again, cases have found that a retroactive award of benefits

rather than a remand is appropriate in such circumstances. *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 374 (6th Cir. 2009) (a remand would be inappropriate and futile where there were "no additional facts to develop or other findings that Majestic as the plan administrator need[ed] to make" and remand "'would serve no purpose'") (quotation omitted); *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1195 (10th Cir. 2007) (remand would be futile where the plan's position on the claim was "untenable", and stating that "there is no point in remanding the case so that the Plan can again deny benefits"); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000) (finding that an award of benefits rather than a remand is proper where the review of the evidence was unreasonable and, in addition, where there were no factual determinations to be made); *Schliebaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998) (no remand is necessary "where it would be a useless formality"); *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1138 n. 11 (7th Cir. 1986) (citing cases where courts have "chosen to decide, rather than remand, issues where the issue was simple, its resolution was clear, and the parties had been afforded a full opportunity to be heard"); *Rothman v. Office Environments of New England Health & Welfare Ben. Plan*, 794 F. Supp. 2d 276, 284 (D. Mass. 2011) ("Remand is inappropriate where 'the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable[]'", and finding that an award of benefits was appropriate where a remand to the Plan Administrator was unlikely to result in a different determination").

Here, there is no evidence in the record that Hodges (or any other employee) was classified by Endo as a Class 1 or Class 2 employee for purposes of benefits

before Hodges filed his claim for benefits. This is uncontested, and LINA chose not to inquire about this on remand. Both Endo and LINA have had multiple chances to provide this information, and I must assume that it does not exist at this stage of the litigation. Since there was no classification in the record, any rationale relevant to that classification is not germane. There is thus no need to remand again on these issues.

As to Endo's determination on a post hoc basis that Hodges was not "Sales Personnel" and his bonuses should be not included as a part of his benefits, I find it did not provide substantial evidence to support LINA's determination, as discussed in both the Remand Order and in this Order. Moreover, LINA failed to inquire on remand as to how Endo determined that someone was or was not Sales Personnel and the rationale behind that determination, or examine whether the rationale was reasonable, errors also made in connection with the initial determination. (Remand Order at 29.) Remanding the case at this stage to allow Endo to "'shore up' [its] denial of benefits with additional bases" would not be appropriate. *Nair v. Pfizer, Inc.*, No. 07-5203(SRC), 2009 WL 1635380, at *10 (D.N.J. June 10, 2009); *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) ("'[a] *post hoc* attempt to furnish a rationale for a denial of pension benefits in order to avoid reversal on appeal, and thus meaningful review'" is not acceptable) (quotation omitted).

Accordingly, the issue becomes whether Hodges meets the definition of "Sales Personnel" based on the record. (*See* Remand Order at 30.) Again, LINA did not address the issue on remand or at any other time. Since "Sales Personnel" is not defined in the plan, I previously found that the common and ordinary meaning of the term must be considered, as a reasonable person in the position of the plan participant

would have understood that term.  (Remand Order at 22-23.)  I found in the Remand Order that while there was no dictionary definition for "Sales Personnel", the Oxford Dictionaries define "Salesman" as "[a] man whose job involves selling or promoting commercial products, either in a store or visiting locations to get orders.  (*Id.* at 23) (citing www.oxforddictionaries.com.)  "[S]alesperson" is defined as "[a]n individual who sells goods and services to other entities" (www.businnessdictionary.com) or a person whose job is to sell things (www.merriam-webster.com).  LINA has not disputed the above definitions or offered any other definition, and the record is complete as to Hodges' duties such that a factfinder can determine whether his job involves sales.  Under these circumstances, I find that there are "no additional facts to develop" on the issue of whether Hodges meets the definition of"Sales Personnel", and a remand is not required.  *Shelby Cnty. Health Care Corp.*, 581 F.3d at 374.  This is an issue that can be determined by the court based on the record.

Here, the evidence in the record shows that Hodges meets the above definitions.  Indeed, the record shows that Hodges had responsibilities to sell and promote Endo's commercial products and services at every available juncture.  Hodges' job was to perform cryotherapy procedures that he had previously sold.  As Hodges points out, he could only have more cases to treat if he had successfully sold new doctors on Endo's products and services or sold existing doctors on performing more cryotherapy procedures.  Also, as the Remand Order noted, the "Summary of Purpose" in the description of his job stated that part of Hodges' duties was to "[a]ssist in the growth and development of existing and new business lines."  (Remand Order at 4).  Hodges was also supposed to "market the technology" and was required "to submit a minimum of 1

lead a month for new cryo users, new applications for existing cryo users, or any other

lead for any of Endo's business." (*Id.*)  The record reflects that Hodges received a

significant portion from bonuses when he did sell products and services, and these

earnings were designates as bonuses on pay stubs.  (AR 745, 762.)   As his counsel

noted, Hodges "received benefits for the leads that he provided for prospective

cryotherapy customers—he was given a bonus of $3,000 for every $100,000 of

pathology work that a doctor performed using Endo's equipment and services, and he

received a monthly bonus for every case that he worked on.  (AR 745.)  I find that these

substantial sales responsibilities and sales-driven compensation would cause a

reasonable insured to believe that he was Sales Personnel—and to devote his efforts to

sales in order to increase his compensation, particularly when he understood that these

bonuses would be paid as part of his long-term disability plan.  (AR 745.)

The three Incentive Compensation Plans also support a finding that Hodges had

sales responsibilities, as discussed previously.  These plans provided bonuses, also

referred to as "incentive compensation payments", to employees like Hodges who

recruit new physicians and convince those physicians to treat cases using Endo's

methods.  (*See, e.g.,* SAR 1124–1134.)   While LINA insists that those plans cannot be

indicative of sales responsibilities because they "expressly apply to those 'performing

cryotherapy procedures,' not sales personnel" (Response Br. at 18), LINA never

explains why the two are mutually exclusive.  In fact, LINA previously left open the

possibility that Hodges could be both a technician and in a sales position.  (AR 319.)

And the definitions noted by the Court do not require that sales be the exclusive focus of

the job.  LINA's decision, in reliance on Endo, that Hodges was not Sales Personnel, is not reasonably supported and is not based on a full and fair review of the evidence.

Based on the foregoing, I find that a retroactive award of benefits is appropriate, rather than another remand.   Within 60 days of this Order, LINA shall reclassify Hodges as a Class 2 employee, calculate the additional benefits owed to Plaintiff as a Class 2 employee, and pay him any past-due benefits.

Finally, Hodges' request for attorneys' fees is denied without prejudice.  I find that he should file a motion so that the issue can be considered properly.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall be filed as a separate document").  The motion can then also address the ruling on the merits in this Order.  Any motion for attorneys' fees shall be filed by Friday, June 29, 2018.

IV.    CONCLUSION

Based upon the foregoing, it is

ORDERED that the decision of the Plan Administrator is **REVERSED.**  Hodges is awarded benefits, retroactive to the date his long term disability benefits commenced to the date of this Order.  Said benefits shall be paid within 60 days of this Order, or by **Monday, August 6, 2018**.  It is

FURTHER ORDERED that Hodges' request for attorney fees is **DENIED WITHOUT PREJUDICE**.  Hodges may file a motion for such fees by **Friday, June 22, 2018**.  Finally, in light of this Order, it is

ORDERED that the parties' Joint Motion for Determination (ECF No. 51) is **DENIED AS MOOT**.

Dated:  June 7, 2018

BY THE COURT:


s/ Wiley Y. Daniel_____
Wiley Y. Daniel
Senior United States District Judge